UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

PKNY IP & FRANCHISE, LLC,

Plaintiff,

–against–

GRAB & GO CONVENIENCE LLC and SAJID "SID" S. SOHAIL,

Defendants.

--------------------------------------------------------x

Case No. 1:26-cv-________

**COMPLAINT**

Plaintiff PKNY IP & Franchise, LLC ("PKNY IP" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Grab & Go Convenience LLC ("Grab & Go") and Sajid "Sid" S. Sohail ("Sohail," and together with Grab & Go, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 et seq., for trademark infringement and unfair competition under New York common law, and for breach of contract under New York law.

2. PKNY IP owns the famous PAPAYA KING® trademarks (the "Trademarks," defined below), associated with the iconic New York City hot dog and tropical fruit drink eateries operating under the Papaya King name since 1932.

3. Defendant Grab & Go Convenience LLC is Plaintiff's former licensee; Sahid "Sid" Sohail ("Sohail"), is the managing member of Defendant Grab & Go Convenience LLC. Both Defendants entered into a Settlement Agreement dated as of July 27, 2021 (the "2021 Settlement Agreement"), a copy of which is attached as Exhibit 1. Defendant Grab & Go Convenience LLC also agreed to the terms of a Letter Agreement dated July 25, 20223 ("2023 Letter Agreement"),

a copy of which is attached as Exhibit 2. The 2021 Settlement Agreement and the 2023 Letter Agreement (collectively, the "Overall Settlement Agreement"), provided that Defendant Grab & Go Convenience LLC would be granted a limited, non-transferable, conditional license (the "License") to use the Trademarks in connection with the operation of a single Papaya King restaurant in exchange for, among other things, a monthly license fee of $2,500 and strict compliance with the other conditions of the License. Although Defendant Grab & Go Convenience LLC never signed the Letter Agreement, it initially paid the Monthly License Fee and affirmatively indicated its assent to the terms of the Overall Settlement Agreement.

4. In August 2024, Defendants stopped paying the Monthly License Fee as required, and began paying only sporadically, making a total of nine payments since the end of 2024.

5. For more than two years since their default and the consequent termination of the License, and despite repeated warnings and demands that Defendants cure their breaches and cease using the Trademarks, Defendants have continued—without any right, license, or authorization whatsoever—to operate under the PAPAYA KING name and marks, to display the Trademarks on exterior and interior signage, menus, packaging, and advertising, and to market and sell goods and services under the Trademarks in person and through online ordering and delivery platforms.

6. It is black-letter law that a trademark licensee's continued use of a licensor's mark after termination of the license constitutes trademark infringement. Defendants' conduct is knowing, willful, and in bad faith: Defendants know exactly where the boundaries of their rights lie, having twice negotiated written license terms with Plaintiff, and having previously been sued by Plaintiff's affiliates for, among other things, infringement of the very same Trademarks.

7. Plaintiff brings this action to recover the license fees and other amounts Defendants owe under the License, to recover damages, Defendants' profits, and enhanced damages under the Lanham Act, and to permanently enjoin Defendants' unauthorized use of the Trademarks.

## THE PARTIES

8. Plaintiff PKNY IP & Franchise, LLC is a Delaware limited liability company with its principal place of business at 116 Franklin Street, Ground Floor, New York, New York 10013. PKNY IP owns the Trademarks and is authorized to license and enforce its rights in the Trademarks.

9. Upon information and belief, Defendant Grab & Go Convenience LLC is a New York limited liability company with its principal place of business at 206 East 86th Street, New York 10028.

10. Upon information and belief, Defendant Sajid "Sid" S. Sohail is an individual residing in the State of New York. Sohail is the managing member of Grab & Go and at all relevant times has dominated and controlled Grab & Go's operations. Sohail personally executed the 2021 Settlement Agreement, both individually and on behalf of Grab & Go. Sohail also personally agreed to the terms of the 2023 Letter Agreement. Upon information and belief, Sohail personally directed, controlled, authorized, ratified, and participated in, and was the moving, active, and conscious force behind, the infringing acts alleged herein, and personally benefited from them.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over Plaintiff's related state-law unfair competition claim pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a),

because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

12. This Court has personal jurisdiction over Defendants because, among other things, Defendants reside and/or maintain their principal place of business in the State of New York and in this District; the acts of infringement and breach complained of occurred and are occurring in this District; and Defendants agreed in the Settlement Agreement that they would be governed by New York law and that disputes would be brought in a state or federal court within the State of New York.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred, and continues to occur, in this District, including Defendants' ongoing unauthorized operation of a Papaya King restaurant at 206 East 86th Street, New York, NY 10028.

## FACTUAL ALLEGATIONS

### A. The Papaya King Brand and the Trademarks

14. The Papaya King brand traces its origins to 1932, when the first Papaya King stand opened on the Upper East Side of Manhattan. For decades, Papaya King has been a celebrated New York City institution, famous for its hot dogs and tropical fruit drinks, and the PAPAYA KING marks have acquired enormous goodwill and secondary meaning among consumers.

15. Plaintiff owns the following United States trademark registrations for the PAPAYA KING marks, among other rights (collectively, together with all associated common-law rights and goodwill, the "Trademarks"):

| **Mark** | **Registration No.** | **Registration Date** | **Goods/Services** |
|---|---|---|---|
| PAPAYA KING | 2,967,772 | July 12, 2005 | Meat products, namely frankfurters |
| PAPAYA KING | 4,005,625 | August 2, 2011 | Restaurant franchising, namely, offering technical assistance in the establishment and/or operation of restaurants featuring the sale of tropical drinks, smoothies and hot dogs |
| | 4,148,878 | May 29, 2012 | T-shirts, hats, caps, aprons |
| | 4,166,602 | July 3, 2012 | Restaurant services in the nature of a snack bar featuring papaya drinks and hot dogs |

Status and title copies of the foregoing registrations from the online records of the US Patent and Trademark Office are attached as Exhibit 3.

16. Each of the foregoing registrations is valid, subsisting, and has become incontestable pursuant to 15 U.S.C. § 1065, constituting conclusive evidence of the validity of the

registered marks, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks in commerce in connection with the goods and services specified in the registrations.

17. The Trademarks are distinctive and widely recognized by the consuming public as identifying a single source of high-quality food and beverage products and restaurant services.

**B. The Prior Litigation and the 2021 Settlement Agreement**

18. On or about November 26, 2019, affiliates of Plaintiff entered into a management agreement with Grab & Go concerning the operation of the Papaya King business, which was terminated by written notice dated April 29, 2020 based on Defendants' defaults.

19. On or about August 3, 2020, Plaintiff and its affiliates commenced an action against Defendants in the Supreme Court of the State of New York, County of New York, Index No. 156000/2020, asserting claims for, among other things, breach of contract and trademark infringement under the Lanham Act (the "Prior Action").

20. On or about July 27, 2021, the parties resolved the Prior Action by entering into the 2021 Settlement Agreement. Among other things, Defendants made a settlement payment, and Defendant Grab & Go was granted a limited, conditional, non-transferable License to use the Trademarks solely for the operation of a Papaya King restaurant located at 179 East 86th Street, New York, New York (the "Prior 86th Street Location"), in exchange for a monthly license fee. The License was terminable upon nonpayment following five days' notice, and would terminate automatically if Defendant Grab & Go vacated or was evicted from the Prior 86th Street Location.

**C. The 2023 Letter Agreement**

21. Grab & Go subsequently vacated the Prior 86th Street Location and requested that PKNY IP approve use of the Trademarks at a replacement Papaya King store (the "Replacement Store").

22. By the Letter Agreement dated July 25, 2023, PKNY IP approved use of the Trademarks at the Replacement Store on terms that expressly superseded Section 4 of the Settlement Agreement in its entirety. Except as amended by the Letter Agreement, the Settlement Agreement remained unchanged and in full force and effect.

23. Under the Letter Agreement, among other terms and conditions:

(a) the License was effective solely for the operation of a Papaya King restaurant at the Replacement Store;

(b) the License was non-transferable;

(c) commencing May 1, 2023, Grab & Go was required to pay a Monthly License Fee of $2,500 per month for the Replacement Store, payable on or before the first calendar day of each month, subject to increase upon achievement of specified sales thresholds;

(d) the License would terminate, at PKNY IP's election in its sole discretion, if any required license fee was not paid and received within five calendar days after notice of default;

(e) the License would also terminate, at PKNY IP's election, if Grab & Go failed to continually operate the Replacement Store in accordance with historical operating precedent, or failed to utilize the Trademarks in accordance with the brand standards and operating standards in effect as of November 26, 2019, as amended;

(f) in the event of termination for breach, Grab & Go would remain obligated to pay the Monthly License Fee for all locations for a period of at least two years, even if any location was not operating for any or no reason at all;

(g) unless terminated sooner, the License would terminate on May 1, 2033; and

(h) Grab & Go agreed that it "shall be solely responsible for any and all legal fees and costs incurred by PKNY IP in connection with the preparation, negotiation, or enforcement by PKNY IP of this agreement."

**D. Defendants' Defaults and the Termination of the License**

24. Grab & Go has only sporadically paid the Monthly License Fee, making a total of nine payments since the end of 2024.

25. Although not contractually required to do so, Plaintiff repeatedly warned Defendants of their breaches in writing, including via multiple text messages and a formal demand letter from counsel in May 2026 . Among other things, Plaintiff demanded payment of all past-due amounts, and cautioned Defendants that continued nonpayment would result in the termination of the License and the loss of any right to use the Trademarks.

26. Each of Plaintiff's written warnings constituted notice of default under the Settlement Agreement. Notwithstanding these repeated written notices and demands, Grab & Go failed and refused to pay the past-due Monthly License Fees within five calendar days of any such notice, or at all, and failed and refused to cure any of its defaults.

27. Accordingly, the License has terminated, along with any right of Defendants rights to continue using the Trademarks.

28. As of the filing of this Complaint, Grab & Go owes Plaintiff no less than $50,000 in unpaid Monthly License Fees, exclusive of the post-termination fee obligations, interest, and attorneys' fees and costs to which Plaintiff is entitled.

**E. Defendants' Willful Post-Termination Infringement**

29. Notwithstanding the Termination, and notwithstanding Plaintiff's repeated written demands—both before and after the Termination—that Defendants cure their breaches and cease and desist from any further use of the Trademarks, Defendants have continued for more than two years, and continue to this day, to operate the Replacement Store as a purported "Papaya King" restaurant. Defendants have ignored every one of Plaintiff's written warnings and demands.

30. Defendants' unauthorized uses of the Trademarks include, without limitation: (a) exterior and interior signage at the Replacement Store bearing the PAPAYA KING marks; (b) menus, menu boards, packaging, cups, and other point-of-sale materials bearing the Trademarks; (c) advertising and promotion of the Replacement Store under the PAPAYA KING name, including on social media; and (d) listing, marketing, and selling goods under the PAPAYA KING name and marks on online ordering and delivery platforms such as Seamless, Grubhub, Uber Eats, and similar services.

31. Defendants are using the identical Trademarks in connection with the identical goods and services covered by Plaintiff's registrations—restaurant services and the sale of hot dogs, fruit drinks, and related items—in the very trading area where the Trademarks are most famous.

32. Defendants' unauthorized use of the Trademarks is likely to cause, and upon information and belief has caused, confusion, mistake, and deception among consumers as to the source, sponsorship, affiliation, or approval of Defendants' goods and services. Consumers encountering the Replacement Store reasonably but mistakenly believe it is licensed, sponsored, or approved by Plaintiff. Indeed, because Defendants operate a store that was formerly licensed, confusion is not merely likely—it is inevitable.

33. Defendants' continued unauthorized use of the Trademarks jeopardizes Plaintiff's reputation and the goodwill of the Trademarks and is causing irreparable injury to Plaintiff.

34. Defendants' infringement is knowing, deliberate, and willful. Defendants have actual knowledge of Plaintiff's rights, having twice contracted for a limited license to use the Trademarks, having previously been sued for trademark infringement in the Prior Action, and having received multiple written notice of their breaches, and repeated written demands to cease use of the Trademarks. Defendants nevertheless continue, in conscious disregard of Plaintiff's rights and of their own written agreements, to trade on the goodwill of the PAPAYA KING brand without paying for it.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement – 15 U.S.C. § 1114 – Against All Defendants)**

35. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

36. Plaintiff owns valid and subsisting federal registrations for the Trademarks, which are in full force and effect.

37. Following the Termination, Defendants have used, and continue to use, in commerce reproductions, counterfeits, copies, and colorable imitations of the registered Trademarks in connection with the sale, offering for sale, distribution, and advertising of goods and services, without Plaintiff's consent, in a manner that is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1).

38. A licensee's continued use of a licensed mark after the license has been terminated constitutes trademark infringement, and confusion in such circumstances is presumed.

39. Sohail is personally liable for the infringement because he is the moving, active, and conscious force behind Grab & Go's infringing conduct, which he has personally directed, controlled, authorized, and ratified.

40. Defendants' infringement is willful and in bad faith, and this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

41. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, damages, and Defendants have been unjustly enriched by profits earned through their unauthorized use of the Trademarks, in amounts to be proven at trial.

42. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law. Pursuant to 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm, and Plaintiff is entitled to a permanent injunction.

## <u>SECOND CAUSE OF ACTION</u>

**(False Designation of Origin and Unfair Competition – 15 U.S.C. § 1125(a) – Against All Defendants)**

43. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

44. Defendants' unauthorized use of the Trademarks in commerce constitutes a false designation of origin and a false or misleading description or representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff, in violation of 15 U.S.C. § 1125(a).

45. Defendants' conduct is willful and in bad faith and has caused, and unless enjoined will continue to cause, damage and irreparable injury to Plaintiff.

**<u>THIRD CAUSE OF ACTION</u>**

**(Trademark Infringement and Unfair Competition – New York Common Law – Against All Defendants)**

46. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

47. Plaintiff owns valid and protectable common-law rights in the Trademarks in New York, where the marks have been used continuously and extensively since 1932.

48. Defendants' unauthorized use of the Trademarks constitutes trademark infringement and unfair competition under the common law of the State of New York, and was and is undertaken in bad faith, with the intent to trade upon Plaintiff's goodwill.

49. As a direct and proximate result, Plaintiff has been damaged and irreparably injured, and will continue to be damaged and irreparably injured unless Defendants are enjoined.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Breach of Contract – Against Defendant Grab & Go Convenience LLC)**

50. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

51. The Settlement Agreement, including the License terms contained therein, are valid, binding, and enforceable contracts, supported by consideration.

52. Plaintiff has performed all of its obligations under the License.

53. Defendant Grab & Go Convenience LLC materially breached the License by, among other things: (a) failing and refusing to pay the Monthly License Fees; and (b) continuing to use the Trademarks after the Termination in violation of the express limitations of the License.

54. Under the License as set forth in the Settlement Agreement, upon termination for breach, Defendant Grab & Go Convenience LLC is further obligated to pay the Monthly License Fee for all locations for a period of at least two years.

55. Defendant Grab & Go Convenience LLC further agreed to be solely responsible for any and all legal fees and costs incurred by PKNY IP in connection with the enforcement of the Settlement Agreement, which separately entitles the prevailing party in any enforcement action to recover its reasonable attorneys' fees and costs.

56. As a direct and proximate result of Defendant Grab & Go Convenience LLC's breaches, Plaintiff has been damaged in an amount to be proven at trial, but no less than $75,000, consisting of all unpaid Monthly License Fees through the Termination, all post-termination Monthly License Fees required under the Settlement Agreement and the License terms, the unpaid Additional Upfront Amount, and pre-judgment interest at the statutory rate of nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001 and 5004, together with Plaintiff's attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

**(Unjust Enrichment – In the Alternative – Against All Defendants)**

57. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

58. In the alternative, and to the extent any Defendant is found not to be bound by the terms of the License, Defendants have been enriched at Plaintiff's expense by exploiting the Trademarks and the goodwill of the Papaya King brand without paying for that use.

59. Equity and good conscience require that Defendants make restitution to Plaintiff of the value of their unauthorized use of the Trademarks, including at minimum the license fees Defendants would have owed for such use, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

A. Permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, pursuant to 15 U.S.C. § 1116 and the Court's equitable powers, from: (i) using the Trademarks, or any mark, name, logo, trade dress, or designation confusingly similar thereto, in connection with the advertising, promotion, offering for sale, or sale of any goods or services, including at the Replacement Store; (ii) representing, by any means, that Defendants or their goods or services are licensed, sponsored, approved by, or affiliated with Plaintiff; and (iii) registering or using any domain name, social media account, or online listing (including on delivery platforms such as Seamless, Grubhub, and UberEats) incorporating the Trademarks or any confusingly similar designation;

B. Directing Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction all signage, menus, labels, packaging, advertisements, and other materials in their possession, custody, or control bearing the Trademarks or any confusingly similar designation, and to remove all such signage from the Replacement Store;

C. Directing Defendants to file with the Court and serve upon Plaintiff, within thirty days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

D. Awarding Plaintiff, pursuant to 15 U.S.C. § 1117(a), Defendants' profits, Plaintiff's actual damages, and the costs of this action, and trebling such profits and damages in light of Defendants' willful infringement;

E. Awarding Plaintiff damages for breach of contract in an amount to be determined at trial, but no less than $75,000, including all unpaid Monthly License Fees, all post-termination Monthly License Fees due under the Settlement Agreement, and the License terms;

F. Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to the Settlement Agreement and the License and 15 U.S.C. § 1117(a);

G. Awarding Plaintiff pre-judgment and post-judgment interest to the fullest extent permitted by law, including at nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001 and 5004 on Plaintiff's contract damages; and

H. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: September 30, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Daniel I. Schloss

Daniel I. Schloss
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-2256

SchlossD@gtlaw.com

*Attorneys for Plaintiff*
*PKNY IP & Franchise, LLC*